UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PHILIP SETH COHEN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SANTA CRUZ, et al., <br><br> Defendants. | Case No. 16-CV-06404-LHK <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** <br><br> Re: ECF No. 8 |

Plaintiffs Philip Cohen and Kimberly Horning ("Plaintiffs") sue Defendants County of Santa Cruz ("County"), Kathleen Previsich, and John Previsich (the "Previsiches" or, collectively with the County, "Defendants") for causes of action under both California and federal law. Before the Court is Defendants' motion to dismiss. ECF No. 8 ("Def. Mot."). Pursuant to Civil Local Rule 7-1(b), the Court concludes that this motion is appropriate for determination without oral argument and hereby VACATES the motion hearing set for February 9, 2017, at 1:30 p.m. Having considered the parties' submissions, the relevant law, and the record in this case, the Court hereby GRANTS Defendants' motion to dismiss.

**I. BACKGROUND**

**A. Factual Background**

1    Plaintiffs reside and own property at 260 Ranchitos del Sol in Aptos, California. ECF No. 1-2 (Complaint, or "Compl."), ¶ 11. Plaintiffs' property is adjacent and downslope to 280 Ranchitos del Sol, which is owned by Defendants Kathleen and John Previsich. *Id.* ¶ 23. Kathleen Previsich is the Planning Director of the Planning Department of the County of Santa Cruz ("Planning Department"). *Id.* ¶ 14.

On July 25, 2012, the Previsiches filed a Building Permit Application ("Permit Application") with the Planning Department. *Id.* ¶ 24. The Permit Application "request[ed] authorization to construct a two-story, 1576-square-foot, addition to their existing two-story single family dwelling, to remodel 314 square feet of their existing house, and to construct a 252-square foot deck." *Id*.

On July 14, 2011, Bauldry Engineering, Inc., prepared a "Geotechnical Report" "to accompany the Permit" Application. *Id.* ¶ 25. The Geotechnical Report "described minimum excavation near the footings, but clarified that no new cut or fill slopes had been proposed." *Id.* ¶ 26. Moreover, the geotechnical report "warned that the Previsich property's surface soils are moderately to highly erodible, and that all finished and disturbed ground surfaces should be prepared and maintained to reduce erosion." *Id.* ¶ 26. According to the Complaint, the Geotechnical Report "never mentioned proposed grading of any volume greater than 100 cubic yards." *Id.* ¶ 26.

On October 23, 2012, the Planning Department issued the building permit ("the Permit") to the Previsiches. *Id.* ¶ 24.

On March 8, 2013, Brian Bauldry ("Bauldry") from Bauldry Engineering sent a letter to the Previsiches informing the Previsiches that certain "soils on the Previsiches property were susceptible to down slope creep." *Id.* ¶ 28. Bauldry "proposed to stabilize these soils and to rebuild the slope as an engineered fill slope with a shallower grade than the preexisting slope." *Id.*

On March 14, 2013, the Previsiches applied for an amended Building Permit Application ("Amended Permit Application"). The Previsiches "label[ed] the amendment as a 'Change Order.'" *Id.* at ¶ 29. The Amended Permit Application "included grading for 980 cubic yards of

2

fill." *Id.* The Planning Department approved the Amended Permit Application on March 19, 2013. *Id.*

According to Plaintiff, "the staff member who approved both the initial and the amended applications, identified by the initials 'DAN,' and his superior and supervisor, Kathleen Previsich . . . knew that a Grading Permit and Erosion Control Plan were required in relation to the Previsiches' grading activities." *Id.* ¶ 31. However, neither individual "either applied for or required these approvals." *Id.* Rather, Plaintiff alleges on information and belief that the Planning Department "gave the Previsiches special treatment" in "not requir[ing] [the Previsiches] to submit a Grading Approval Permit Application or adopt additional protections that would have prevented the damage to Plaintiff's property." *Id.* According to the Complaint, "[t]he County's failure to require the Previsiches to submit a Grading Approval Application meant that [the County] failed to obtain crucial required information" such as "property lines and contours of the existing ground and details of terrain and area drainage," "detailed plans of all surface and subsurface drainage devices," and "formulation of an Erosion Control Plan to prevent runoff and erosion both during and after grading activities." *Id.* ¶ 32. Plaintiffs further allege that "[t]he County never provided Plaintiffs with an opportunity for a hearing on the proposed building permit or its proposed amendment." *Id.* ¶ 33.

On December 11, 2014, Plaintiffs' property suffered damage from increased drainage and runoff resulting from the Previsiches' recent grading activities" which Plaintiffs state "has significantly impacted Plaintiffs' use and enjoyment of their property." *Id.* ¶ 35. Moreover, Plaintiffs allege that the "grading and earth compacting activities" on the Previsiches' property "caused severe earthshaking" which "migrated onto Plaintiffs' land, causing a retaining wall on Plaintiffs' property . . . to collapse and the retaining wall to cease adequately retaining soil." *Id.* ¶ 36. Plaintiffs state that, "[i]n early 2015, Plaintiffs requested all information from the County relating to the County's involvement in the Previsiches' construction and grading activities" and "discovered the County's illegal issuance of the Change Order and its failure to require a Grading Approval Permit." *Id.* ¶ 37.

3

Case No.16-CV-06404-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Plaintiffs filed a state administrative claim against the County, Kathleen Previsich, and the County employee "DAN" on March 7, 2016. *Id.* ¶ 39. The County denied Plaintiffs' administrative claim as untimely. *Id.* ¶¶ 40–44.

**B.     Procedural History**

On October 3, 2016, Plaintiffs filed a Complaint against Defendants in the Santa Cruz County Superior Court. *See id.* Plaintiffs alleged six causes of action against Defendants.

Count One of the Complaint alleged that the County and Kathleen Previsich, acting in her official capacity, violated the California Tort Claims Act, also called the Government Tort Claims Act, Cal. Gov. Code §§ 815, *et seq. Id.* ¶ 45.

Count Two of the Complaint alleged that the County and Kathleen Previsich, acting in her official capacity, violated Article I, § 7 of the California Constitution, in addition to 42 U.S.C. § 1983, for committing "substantive and procedural due process violations." *Id.* ¶¶ 59–68.

Count Three of the Complaint alleged that the County and Kathleen Previsich, acting in her official capacity, violated Article I, § 7 of the California Constitution, in addition to 42 U.S.C. § 1983, for committing "state and federal equal protection violations." *Id.* ¶¶ 69–75.

Count Four of the Complaint alleged that the Previsiches committed trespass. *Id.* ¶¶ 76–80.

Count Five of the Complaint alleged that the Previsiches caused a nuisance. *Id.* ¶¶ 81–85.

Finally, Count Six of the Complaint alleged that the Previsiches were negligent in grading and compacting the fill on the Previsiches' property. *Id.* ¶¶ 86–90.

On November 2, 2016, Defendants filed a Notice of Removal in this Court, asserting removal on the basis of federal question jurisdiction. ECF No. 1, at 1.

On November 7, 2016, Defendants filed a motion to dismiss portions of Plaintiffs' Complaint. *See* Def. Mot. On November 21, 2016, Plaintiffs filed a response in opposition. ECF No. 11 ("Pl. Opp."). On November 28, 2016, Defendants filed a reply. ECF No. 12 ("Def. Reply").

**II.     LEGAL STANDARD**

**A.     Rule 12(b)(6) Motion to Dismiss**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept [s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

**B.     Leave to Amend**

If the Court concludes that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (ellipsis in original).

Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III.   DISCUSSION

Defendants move to dismiss only a portion of Plaintiff's claims. Specifically, Defendants contend that Plaintiffs have failed to state a claim (1) in Count One under the California Tort Claims Act; (2) in Count Two, both under the California Constitution and under the U.S. Constitution for violation of procedural due process; and (3) in Count Three under the California Constitution. *See* Def. Mot. The Court addresses each of these arguments below.

### A.   Plaintiffs Have Failed to State a Claim in Count One under the California Tort Claims Act

Count One of Plaintiffs' Complaint alleges that Defendants violated the California Tort Claims Act, Cal. Gov't Code §§ 815, *et seq*. *See* Compl. ¶¶ 45–51. "The California Tort Claims Act provides that a public entity is not liable for injury arising from an act or omission except as provided by statute." *Creason v. Dep't of Hlth. Servs.*, 957 P.2d 1323, 1327 (Cal. 1998) (citing Cal. Gov't Code § 815). In its motion to dismiss, Defendants assert that Plaintiffs have failed to state a claim under the California Tort Claims Act because Plaintiffs "have failed to actually identify the enactment that [Plaintiffs] claim imposes a mandatory duty" on the County. Def. Mot. at 5. For the reasons discussed below, the Court agrees with Defendants.

As an initial matter, the Court notes that Plaintiffs' Complaint fails to allege the provision of the California Tort Claims Act that Defendants allegedly violated. Count One cites only to the California Tort Claims Act generally. *See* Compl. ¶ 45 (citing to Cal. Gov't Code §§ 815, *et seq*."). Defendants—and the Court—assume that because Plaintiffs refer to Defendants' "mandatory dut[ies]" in the Complaint, Plaintiffs intend to bring a cause of action pursuant to § 815.6 of the California Tort Claims Act. *See* Cal. Gov't Code § 815.6.

6
Case No.16-CV-06404-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

California Government Code § 815.6 provides that "[w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." Cal. Gov't Code § 815.6.  California courts have interpreted this section as having three elements:  (1) the enactment at issue must impose a mandatory duty on the public entity, meaning that the enactment is "*obligatory*, rather than merely discretionary or permissive, in its directions to the public entity"; (2) "the mandatory duty [must] be 'designed' to protect against the particular kind of injury the plaintiff suffered"; and (3) the public entity's breach of the mandatory duty must have been a proximate cause of the plaintiff's injury.  *Guzman v. Cty. of Monterey*, 209 P.3d 89, 95–96 (Cal. 2009) (internal quotation marks omitted).

Significantly, in order to state a claim under this provision, "Plaintiffs must 'identify a specific statute declaring the entity to be liable, or at least creating some specific duty of care by the agency in favor of the injured party.'"  *Novin v. Fong*, 2014 WL 6956923, at *11 (N.D. Cal. Dec. 8, 2014) (quoting *de Villers v. Cty. of San Diego*, 67 Cal. Rptr. 3d 253, 259 (Cal. Ct. App. 2007)); *see also Oracle v. Santa Cruz Cty. Planning Dep't*, 2009 WL 1371461, at *5 (N.D. Cal. May 15, 2009) ("[I]t is well-settled that a claim under § 815.6 must allege a specific enactment that creates the mandatory duty.").  Indeed, as California courts have explained, "[s]ince the duty of a governmental agency can only be created by statute or 'enactment,' the statute or 'enactment' claimed to establish the duty must at the very least be identified." *Becerra v. Cty. of Santa Cruz*, 68 Cal. App. 4th 1450, 1458 (Cal. Ct. App. 1998) (internal quotation marks omitted).  "Unless the applicable enactment is alleged in specific terms, a court cannot determine whether the enactment relied upon was intended to impose an obligatory duty to take official action to prevent foreseeable injuries or whether it was merely advisory in character." *Id.*; *see also Lehto v. City of Oxnard*, 171 Cal. App. 3d 285, 292–93 (Cal. Ct. App. 1985) ("Based upon the manifest intent underlying § 815.6, we think it obvious that a litigant seeking to plead the breach of a mandatory duty must specifically allege the applicable statute or regulation.  Only by doing so may the public

7
Case No.16-CV-06404-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

1  entity be advised of the factual and legal basis of the claim against it.").

2  Count One of Plaintiffs' Complaint cites the California Tort Claims Act generally and
3  alleges that "[u]nder Chapter 16.20 of the County Code, setting forth grading regulations, the
4  County had a mandatory duty to obtain additional information from the Previsiches regarding the
5  nature and potential impacts of the Previsiches' proposed grading activities." Compl. ¶ 47.
6  Moreover, Count One alleges that "[i]n addition, County had a mandatory duty to condition
7  approval of the Previsiches' grading activities upon the adoption of an Erosion Control Plan, with
8  controls designed to eliminate or reduce the risk of damage in the form of runoff, erosion, and
9  drainage to nearby properties." *Id.*

10  The Court agrees with Defendants that Count One fails to "allege[] in specific terms" the
11  enactment that Plaintiffs contend imposes the alleged mandatory duties upon Defendants. *See*
12  *Becerra*, 68 Cal. App. 4th at 1458. As Defendants assert in their motion to dismiss, Chapter 16.20
13  of the County Code, which is titled "Grading Regulations," contains thirty-two separate sections.
14  *See* Def. Mot. Ex. A. Moreover, Chapter 16.20 cross references to Chapter 18.10 of the County
15  Code, which sets forth the County's "Permit and Approval Procedures." Def. Mot. Ex. B.
16  Chapter 18.10 contains fifty-three separate sections. *Id.* Accordingly, by simply referencing
17  "Chapter 16.20" and stating generally that Defendants have a "mandatory duty to obtain additional
18  information from the Previsiches regarding the nature and potential impacts of the Previsiches'
19  proposed grading activities" and "a mandatory duty to condition approval of the Previsiches'
20  grading activities upon the adoption of an Erosion Control Plan," Plaintiffs have not provided
21  Defendants or the Court with a sufficient basis to determine whether a specific enactment imposes
22  the alleged duties upon Defendants. *See Becerra*, 68 Cal. App. 4th at 1458 ("Unless the applicable
23  enactment is alleged in specific terms, a court cannot determine whether the enactment relied upon
24  was intended to impose an obligatory duty to take official action to prevent foreseeable injuries or
25  whether it was merely advisory in character.").

26  Plaintiffs' response in opposition to Defendants' motion to dismiss only muddies the
27  waters. Specifically, Plaintiffs assert that Plaintiffs have stated a claim because Plaintiffs' state

28

8
Case No.16-CV-06404-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

administrative claim against the County, which is attached to the Complaint, references § 16.20.060(C) of the County Code, which sets forth what an applicant for a grading permit should include in his or her application and cross references Chapter 18.10. *See* Pl. Opp. at 8; *see also* Compl., Ex. A. However, Plaintiffs' administrative claim against the County also states broadly that "[t]he County Code contains a litany of requirements for work performed that have not been required of the Planning Director" and, as stated above, Count One of Plaintiffs' Complaint does not cite § 16.20.060(C) or any specific section of "Chapter 16.20" in alleging Defendants' mandatory duties. *See* Compl. Ex. A; *id.* ¶ 45. More significantly, Plaintiffs' response in opposition to Defendants' motion to dismiss makes clear that Plaintiffs do not allege that Defendants' mandatory duties arise from § 16.20.060(C) alone. Rather, Plaintiffs state that "other sections of the County Code may be relevant to Plaintiffs' claims." *See* Pl. Opp. at 8. Indeed, rather than identify the specific provisions upon which they rely, Plaintiffs assert that "[r]equiring Plaintiffs to be more specific at this point would be merely decorative." *Id.*

The Court disagrees with Plaintiffs that specificity is "merely decorative." *Id.* Rather, as stated above, "[s]ince the duty of a governmental agency can only be created by statute, the statute claimed to establish the duty must be identified" so that Defendants are on notice of the claims asserted against them. *D.K. ex rel. GM v. Solano Cty. Office of Educ.*, 667 F. Supp. 2d 1184, 1198 (E.D. Cal. 2009) (citing *Searcy v. Hemet Unified Sch. Dist.*, 177 Cal. App. 3d 792, 802 (Cal. Ct. App. 1986)); *see also Becerra*, 68 Cal. App. 4th at 1458 ("Unless the applicable enactment is alleged in specific terms, a court cannot determine whether the enactment relied upon was intended to impose an obligatory duty to take official action to prevent foreseeable injuries or whether it was merely advisory in character."). Moreover, it is also important for a Plaintiff to adequately plead a specific source in bringing a § 815.6 claim because "[w]hether a particular statute is intended to impose a mandatory duty . . . is a question of statutory interpretation for the courts." *B.H. v. Cty. of San Bernardino*, 361 P.3d 319, 326 (Cal. 2015). As the California Supreme Court has explained, "[c]ourts have construed th[e] first prong [of § 815.6 liability] rather strictly, finding a mandatory duty only if the enactment 'affirmatively imposes the duty and

provides implementing guidelines.'" *Id.* By simply referencing an entire Chapter of the County Code in their Complaint, and asserting in their opposition that "other sections of the County Code may be relevant to Plaintiffs' claims," *see* Pl. Opp. at 8, Plaintiffs have not provided Defendants or this Court with the information needed to adequately make the statutory interpretation inquiry that is required by California law. "Neither the Court nor Defendants are required to peruse vast portions of various California codes in search of potentially mandatory duties." *Oracle*, 2009 WL 1371461, at *6 (N.D. Cal. May 15, 2009).

Accordingly, district courts within this Circuit have repeatedly recognized that "[w]here a pleading 'fail[s] to identify a statute creating liability' for a public entity, claims against that public entity 'must be dismissed with leave to amend.'" *Sanwal v. Cty. of Sacramento*, 2011 WL 2559388, at *8 (E.D. Cal. June 27, 2011) (quoting *D.K. ex rel. G.M.*, 667 F. Supp. 2d at 1198)); *see also Haar v. City of Mountain View*, 2010 WL 4919478, at *4 (N.D. Cal. Nov. 12, 2010) (dismissing California Tort Claims Act claim because the Plaintiff made only a "general reference to the California Tort Claims Act" and cited an additional irrelevant statute, which was "not sufficient to give Defendants fair notice of Plaintiff's claim and the ground upon which it rests, as required by Rule 8(a)" of the Federal Rules of Civil Procedure); *Oracle*, 2009 WL 1371461, at *6 (N.D. Cal. May 15, 2009) (dismissing California Tort Claims Act claim where the Plaintiff's complaint "rel[ied] on broad 'et seq.' references to the relevant California codes" rather than "plead[ing] a specific source" of Defendant's duty); *Skeels v. Pilegaard*, 2013 WL 5645346, at *3 (N.D. Cal. Oct. 16, 2013) ("Plaintiff's failure to identify a specific statute imposing a mandatory duty in Paragraph 122 [of the complaint] is fatal to the negligence claim because it deprives the County of notice as to the statutory basis for the purported duties alleged in Plaintiff's claim."). The same is true here. Plaintiffs' Complaint fails to state a claim under the California Tort Claims Act.

Defendants argue that the Court should dismiss Count One with prejudice because Defendants are immune from "discretionary" licensing decisions under California law. *See* Def. Mot. at 5. However, as discussed above, because the Complaint fails to set forth a specific

statutory source for Defendants' alleged mandatory duties, the Court at this time need not interpret the County Code to determine whether Defendants are immune. Accordingly, Defendants' motion to dismiss Count One of the Complaint is GRANTED with leave to amend. *See Sanwal*, 2011 WL 2559388 (granting plaintiffs California Tort Claims Act claim with leave to amend where the plaintiffs did not "allege[] which particular statute(s), if any, permit them to bring state law tort claims against the County Defendants"); *see also Leadsinger*, 512 F.3d at 532 (district court should grant leave to amend unless the district court concludes that amendment would be futile). "[I]n any amended pleading, Plaintiff shall set forth for each alleged mandatory duty the specific provision(s) of law that allegedly create that duty." *Oracle*, 2009 WL 1371461, at *6. Failure to do so will result in a dismissal with prejudice.

### B. Plaintiffs Have Failed to State in Counts Two and Three a Claim under the California Constitution

Defendants move to dismiss Counts Two and Three of Plaintiffs' Complaint to the extent that Plaintiffs assert claims under the California Constitution. Def. Mot. at 8. Specifically, Defendants assert that Plaintiffs are barred from asserting a cause of action for monetary damages under the California Constitution, and thus Plaintiffs' California Constitution claims must be dismissed.

Counts Two and Three of Plaintiffs' Complaint allege that the County and Kathleen Previsich, in her official capacity as Planning Director, violated Article I, § 7 of the California Constitution. Section 7 provides: "A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws." However, "[i]t is beyond question that a plaintiff is not entitled to damages for a violation of the due process clause or the equal protection clause of the [California] Constitution." *Javor v. Taggart*, 98 Cal. App. 4th 795, 807 (Cal. Ct. App. 2002); *see also Lopez v. Youngblood*, 609 F. Supp. 2d 1125, 1142 (E.D. Cal. 2009) ("Plaintiffs may not bring damages claims directly under Article I, Section 13 or Section 7"

11
Case No.16-CV-06404-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

of the California Constitution). Thus, to the extent that Plaintiffs seek monetary damages in Counts Two and Three under the California Constitution, the Court agrees with Defendants that Plaintiffs are barred from bringing such a claim. *Javor*, 98 Cal. App. 4th at 807. Accordingly, Plaintiffs' California Constitution claims in Counts One and Two are DISMISSED without leave to amend to the extent that Plaintiffs seek monetary damages. *Willingham v. City of San Leandro*, 2006 WL 3734633, at *3 (N.D. Cal. Dec. 18, 2006) (dismissing without leave to amend a damages claim under Article I, section 7 of the California Constitution "because a private cause of action is not available under such section").

However, Plaintiffs contend in their opposition to Defendants' motion to dismiss that the Complaint's prayer for relief also seeks "injunctive relief." Pl. Opp. at 15. Accordingly, Plaintiffs contend, "Plaintiffs have stated valid claims for equitable relief under the California constitution" in Counts Two and Three. *Id.*

In order for a Plaintiff to have standing to seek an injunction, a "[p]laintiff must demonstrate that he has suffered or is threatened with a [1] 'concrete and particularized' legal harm, coupled with [2] 'a sufficient likelihood that he will be wronged again in a similar way.'" *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985–86 (9th Cir. 2007) (internal quotations and citations omitted). "As to the second inquiry, [a plaintiff] must establish 'a real and immediate threat of repeated injury.'" *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). "[P]ast wrongs do not in themselves amount to [a] real and immediate threat of injury necessary to make out a case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

Plaintiffs' alleged injury is that the County and Kathleen Previsich, in her official capacity as Planning Director, "arbitrarily" and illegally approved the Previsiches' application for a Building Permit. *See* Compl. ¶ 66–67. This is a "past wrong," and Plaintiffs' Complaint contains no allegations that suggest that Plaintiffs face any "real and immediate threat of repeated injury"

12
Case No.16-CV-06404-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

from the County or County officials such that Plaintiff may seek an injunction against the County and Kathleen Previsich in her official capacity. *Lyons*, 461 U.S. at 111 (finding that a plaintiff, who had been illegally choked by the police, had failed to establish standing to seek an injunction because the complaint "did not indicate why [the plaintiff] might be realistically threatened [in the future] by police officers who acted within the strictures of the City's policy"). Indeed, Plaintiffs never state or suggest in either their Complaint or their opposition what activity they wish the Court to enjoin. *See generally* Compl.; Pl. Opp. at 14–15. Accordingly, the allegations in Plaintiffs' Complaint fail to show that Plaintiffs have standing to seek an injunction against the County or Kathleen Previsich in her official capacity. *See Bates*, 511 F.3d at 985–86.

In their opposition to Defendants' motion to dismiss, Plaintiffs assert that "a demand for an improper remedy is not grounds for dismissal" of a claim. Pl. Opp. at 15. However, courts routinely dismiss or strike causes of action where a Plaintiff's Complaint fails to establish entitlement to injunctive relief. *See, e.g.*, *Ice Cream Dist. of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*, 487 F. App'x 362, 363 (9th Cir. 2012) (affirming district court's dismissal of Plaintiff's Unfair Competition Law claim because the plaintiff did "not plead entitlement to injunctive relief"); *see also Labonte v. Gov. of California*, 2014 WL 1512229, at *10 (C.D. Cal. Apr. 14, 2014) (dismissing § 1983 claim under Rule 12(b)(6) because "plaintiff does not have standing to seek injunctive relief"); *In re Napster, Inc. Copyright Litig.*, 354 F. Supp. 2d 1113, 1127 (N.D. Cal. 2005) (dismissing unfair competition counterclaim because the counterclaimant "fail[ed] to allege that it ha[d] suffered any ongoing injury from plaintiffs' anticompetitive conduct").

Accordingly, the Court DISMISSES Plaintiffs' claims in Count Two and Count Three to the extent that Plaintiffs' claims are based on the California Constitution. The Court grants leave to amend, however, for Plaintiff to allege facts that plausibly show Plaintiffs' entitlement to

13

injunctive relief. *See Leadsinger*, 512 F.3d at 532 (holding that a district court should grant leave to amend unless the district court concludes that amendment would be futile).

### C. Plaintiffs Have Failed in Count Two to State a Procedural Due Process Claim under the U.S. Constitution

Lastly, Defendants move to dismiss Count Two of Plaintiffs' Complaint to the extent that Plaintiffs assert a claim under the U.S. Constitution for violation of procedural due process. In order to state a procedural due process claim under the U.S. Constitution, a Plaintiff must allege the existence of "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). Plaintiffs contend that the County deprived Plaintiffs of procedural due process by failing to "provide[] notice or a public hearing on the County's review, approval, or issuance of the subject Building Permits in violation of the County Code." Compl. ¶ 64.

First, to the extent that Plaintiffs assert that Plaintiffs have a constitutionally protected property interest in the County properly applying the County Code to the Previsiches' Permit Application and Amended Permit Application, Plaintiffs have failed to state a federal procedural due process claim. Indeed, the Ninth Circuit rejected a nearly identical argument in *Shanks v. Dressel*, 540 F.3d 1082 (9th Cir. 2008). There, a group of neighboring homeowners brought suit against developers that were granted "a building permit [by the city] to construct a duplex addition" to a house located within a historic neighborhood. *Id.* at 1085. The plaintiffs argued that, in granting the building permit, the city violated several municipal ordinances applicable to historic neighborhoods. *Id.* at 1085. The plaintiffs stated that the construction "compromised the historic character of the [neighborhood], resulting in harm to its 'cultural, architectural, educational, recreational, aesthetic, historic, and economic interests.'" *Id.* at 1085–86.

In considering the plaintiffs' procedural due process argument, the Ninth Circuit stated that

14

Case No.16-CV-06404-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

the plaintiffs did "not have a legitimate claim of entitlement to the denial of the [defendants'] permit in accordance with the historic preservation provisions." *Id.* at 1091. Rather, "[o]nly if the governing statute compels a result 'upon compliance with certain criteria, none of which involve the exercise of discretion by the reviewing body,' does it create a constitutionally protected property interest." *Id.* (quoting *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164–65 (9th Cir. 2005)). The Ninth Circuit concluded that the historic preservation provisions of the municipal code did "not *mandate* any outcome," and thus the plaintiffs had no viable procedural due process claim. *Id.*; *accord Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1217 (10th Cir. 2003) (rejecting plaintiff's argument that the due process clause entitled it "to participate in a hearing prior to [the city's] approval of [defendant's] proposed land use" because the plaintiff "fail[ed] to point to any limitation on [the city's] discretion that would create a protectable property interest in the special use review procedure"); *Gagliardi v. Village of Pawling*, 18 F.3d 188, 191–92 (2d Cir. 1994) ("[Plaintiffs] essentially contend that they have a property interest in the proper enforcement of the Code with regard to [the Defendants' adjacent] property . . . we find that no such right has been created here.").

Here, like the plaintiffs in *Shanks*, Plaintiffs have no "legitimate claim of entitlement to the denial of the [defendants'] permit in accordance with" the County Code. *Shanks*, 540 F.3d at 1091. Under § 16.20.070(A) of the County Code, "it is uncontested that the [County] may grant variances [for grading permits], which indicates that enforcement is, at least to some degree, discretionary." *Sumner v. Bd. of Adjustments of City of Spring Valley Village, TX*, 2013 WL 1336604, at *5 (S.D. Tex. Mar. 29, 2013) (Ellison, J.) (denying a procedural due process claim where the plaintiff argued that the city's failure to require plaintiff's neighbor to comply with a zoning ordinance affected the plaintiffs' privacy and property interests). Accordingly, like the statute at issue in *Shanks*, the County Code provisions applicable here do "not *mandate* any

15

outcome" or "compel[] a result upon compliance with certain criteria, none of which involve the exercise of discretion by the reviewing body."[1]  *Shanks*, 540 F.3d at 1091 (internal quotation marks omitted).  Thus, Plaintiffs have no constitutionally protected property interest in the County properly applying the County Code to the Previsiches.  *Id.* at 1091–92; *see also Horton v. City of Smithville*, 117 F. App'x 345, 347 (5th Cir. 2004) (finding that the plaintiff's "true interest asserted" was "the right to have [the City] enforce its zoning ordinances in the way that the [Plaintiffs] believe they should be enforced," a right to which plaintiff was not entitled).

Second, to the extent that Plaintiffs argue that the government, by granting a building permit to the Previsiches, deprived Plaintiffs of their constitutionally protected property interest in Plaintiffs' own land without notice and a public hearing, Plaintiffs have still failed to state a federal procedural due process claim.  Importantly, under the federal constitution, "[p]rocedural due process protections do not extend to those who suffer indirect harm from government action."  *Dumas v. Kipp*, 90 F.3d 385, 392 (9th Cir. 1996).  Here, the County did not *directly* deprive Plaintiffs of their property without notice and a hearing.  Rather, Plaintiffs allege that the County illegally granted the Previsiches a Building Permit and an Amended Permit, and that the Previsiches' ensuing construction activity on the Previsiches' property caused damage to Plaintiffs' neighboring property.  Compl. ¶ 67.  This type of "indirect harm from government action" is not sufficient to assert a procedural due process violation.  *See Sierra Nevada SW Enterp., Ltd. v. Douglas Cty.*, 506 F. App'x 663, 665 (9th Cir. 2013) (holding that the "indirect impact of" diminished value to plaintiff's development rights that resulted from a County's

---

[1] In holding that the City's enforcement of its building and grading permit application procedures are, at least in part, "discretionary" for purposes of creating a property interest under the U.S. Constitution, the Court expresses no opinion as to whether any duty created by the County Code is "mandatory" or "discretionary" for purposes of the California Tort Claims Act, Cal. Gov't Code § 815.6, a separate inquiry that the Court does not reach in this Order, as discussed *infra* in dismissing Count One.

approval of a development proposal was "not a 'deprivation' for purposes of procedural due process").

In their opposition to Defendants' motion to dismiss, Plaintiffs premise their procedural due process argument on the California Supreme Court's holding in *Horn v. County of Ventura*, 596 P.2d 1134, 1139 (Cal. 1979). *Horn* held that "land use decisions which 'substantially affect' the property rights of owners of adjacent parcels may constitute 'deprivations' of property within the context of procedural due process." *Id.* However, the Ninth Circuit has explained that *Horn*'s "holding was rooted in the due process protections of the *California* Constitution." *Am. Tower Corp. v. City of San Diego*, 763 F.3d 1035, 1049 (9th Cir. 2014) (emphasis added). The Ninth Circuit in *American Tower* reasoned, in part, that *Horn*'s rule was based on the California Constitution because "California's due process protections are, at times, broader than those imposed by the Fourteenth Amendment." *Id.* at 1050. Thus, Plaintiff's reliance on *Horn* for Plaintiff's claim under the U.S. Constitution is misplaced.

Accordingly, Defendants' motion to dismiss Plaintiffs' procedural due process claim based on the U.S. Constitution is GRANTED. However, because amendment is not necessarily futile, the Court will grant Plaintiffs leave to amend Count Two to adequately allege that the County deprived them of a property interest without procedural due process. *See Leadsinger*, 512 F.3d at 532.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss as follows.

- Count One is DISMISSED without prejudice.

- Plaintiffs' claims in Counts Two and Three under the California Constitution are DISMISSED with prejudice to the extent that Plaintiffs seek monetary damages.

- Plaintiffs' claims under the California Constitution in Counts Two and Three are DISMISSED without prejudice to the extent that Plaintiffs seek injunctive relief.

- Plaintiffs' claim in Count Two under the U.S. Constitution for violation of procedural due process is DISMISSED without prejudice.

Should Plaintiff choose to file an amended complaint curing the deficiencies identified in this order, Plaintiff shall do so within thirty (30) days of the date of this order.  Failure to meet this deadline, or failure to cure the deficiencies identified in this order, will result in a dismissal with prejudice.  Plaintiff may not add new parties or claims without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: February 3, 2017

_____
LUCY H. KOH
United States District Judge